Shirley GAINES et al., Appellants,

v.

DOUGHERTY COUNTY BOARD OF ED-
UCATION et al., Appellees.

No. 20984.

United States Court of Appeals
Fifth Circuit.

July 31, 1964.

Motion to Recall Mandate and Rehearing
Denied Aug. 27, 1964.

Donald L. Hollowell, Atlanta, Ga., C. B. King, Albany, Ga., Constance Baker Motley, Derrick A. Bell, Jr., Norman C. Amaker, New York City, for appellants.

Jesse W. Walters, Albany, Ga., Perry, Walters & Langstaff, Albany, Ga., for appellees.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and CARSWELL, District Judge.

TUTTLE, Chief Judge.

Immediately following the submission of this case on appeal we entered an opinion and order pending a decision by the United States Supreme Court in Calhoun v. Latimer, 5 Cir., 321 F.2d 302, the case dealing with the Atlanta school system. The Court has now decided that case, 84 S.Ct. 1235. As we indicated in our prior opinion in this case, 329 F.2d 823, the Supreme Court gave primary consideration in the Calhoun case to the question whether the Atlanta plan, still having eight years to run before bringing a final end to the segregated schools in the city of Atlanta, met the requirements of the "deliberate speed test" announced by the Court in the second appearance of Brown v. Topeka Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. In vacating the judgment of this Court in Calhoun v. Latimer, the Supreme Court remanded the case to the district court for its reconsideration in light of the Supreme Court's recent pronouncements indicating that greater speed in implementing the Brown decision is now required.

In dealing with this matter the Court said:

"Although Atlanta's commendable effort to effect desegregation is recognized, the District Court on remand, must, of course, test the entire Atlanta plan by the considerations discussed in Watson v. City of Memphis, 373 U.S. 526, 529, 83 S.Ct. 1314, 1316, 10 L.Ed.2d 529; Goss v. Board of Education, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632, and Griffin v. County School Board of Prince Edward County, 84 S.Ct. 1226, decided subsequent to the District Court's approval of the plan. In Goss, supra, 373 U.S. at 689, 83 S.Ct. at 1409, we said: '[W]e are not un-

mindful of the deep-rooted problems involved. Indeed, it was consideration for the multifarious local difficulties and "variety of obstacles" which might arise in this transition that led this Court eight years ago to frame its mandate in Brown in such language as "good faith compliance at the earliest practicable date" and "all deliberate speed." Brown v. Board of Education, 349 U.S., at 300, 301, 75 S.Ct. [753], at 756. Now, however, eight years after this decree was rendered and over nine years after the first Brown decision, the context in which we must interpret and apply this language to plans for desegregation has been significantly altered. Compare Watson v. City of Memphis, supra.' "

Thus it is that the Supreme Court vacated the approval by this Court of the Atlanta plan, which had eight years remaining to effect a final end of segregated schooling. The necessary conclusion to be reached from this judgment of the Court is that for a school system which is beginning its plan of desegregation ten years after the second Brown decision, more speed and less deliberation is required. Cf. Griffin v. County School Board of Prince Edward County, supra, 84 S.Ct. 1226, in which the Supreme Court said:

"There has been entirely too much deliberation and not enough speed in enforcing the constitutional rights which we held in Brown v. Board of Education, supra, had been denied Prince Edward County Negro children."

The Court also stated:

"The time for 'mere deliberate speed" has run out, and that phrase can no longer justify denying these Prince Edward County school children their constitutional rights to an education equal to that afforded by the public schools in the other parts of Virginia."

This Court has already recognized the essential change of pace required by the Supreme Court's decision in Calhoun v. Latimer. In three opinions published on June 18th of this year, in the cases of Stell et al. v. Savannah-Chatham County Board of Education et al., 5 Cir., 333 F.2d 55, Harris et al. v. Linda Sue Gibson et al. (companion cases dealt with in single opinion dealing with the Savannah school system and the Brunswick school system in the state of Georgia); Davis et al. v. Board of School Commissioners of Mobile County et al., 5 Cir., 333 F.2d 53, and Armstrong et al. v. Board of Education of City of Birmingham, Alabama et al., 5 Cir., 333 F.2d 47, another panel of this Court dealt extensively with the need for speeding up desegregation plans in the several school boards therein involved.

 While the requirement for speeding up the plans of desegregation must be uniformly applied in all school systems in which litigation reaches the courts of this Circuit, the degree of such speedup must remain somewhat flexible. We have carefully considered the record in this case, and conclude that a minimum requirement for the Board of Education of Dougherty County is that it desegregate the first two grades of school as heretofore required by the preliminary order entered by this Court, and that it also commence desegregation with the twelfth grade, in order that every Negro child in the Dougherty County School System have at least an opportunity to enjoy a desegregated education during his school career. We conclude that this can be accomplished very simply by the trial court's entering an injunction along the following terms:

"ORDER

"The order heretofore entered by this Court is vacated and the following order is substituted in its place:

"(1) Any assignments that have heretofore been made by the defendants of Negro children to formerly all-white schools in the first and second grades for the fall term shall be carried out.

"(2) In the operation of the schools by the defendants the following provi-

:sions shall be put into effect for the fall term, 1964:

"(a) Each person attending the vocational schools operated by defendants shall have the choice of attending the school of his choice, whether the formerly Negro or the formerly white vocational school.

"(b) Each child attending the first grade and each child attending the second grade of the schools operated by the defendants shall have the choice of attending either the nearest formerly Negro school, or the nearest formerly white school, provided that if there is insufficient space in any school as a result of the making of such choice, preference in granting such choice shall be solely on the basis of proximity of the child to the school.

"(c) In each following year, two more grades shall be added to the plan of operation as set out in sub-paragraph (b) hereof.

"(d) The defendants shall grant the same choice to the pupils who will enter the twelfth grade of school as is provided for the first and second grades in sub-paragraph (b) hereof, and each successive year an additional grade shall be added to the plan, progressing to the eleventh and then the tenth grade, until the plan shall have become uniform throughout the school system.

"(3) As an alternative, the defendants may, at any time, so far as affects the grades that have come within the plan of desegregation, abolish all such choices provided the said defendants assign all pupils to the schools nearest their residence without reference to race or color.

"(4) The requirements herein set out are minimum requirements and are subject to modification hereafter upon motion by the plaintiffs, in which event the burden shall rest on the defendants to show cause why further acceleration of the complete desegregation of the county schools should not be required. See Stell et al. v. Savannah-Chatham County Board of Education et al., 5 Cir., decided June 18, 1964, 333 F.2d 55, as to the burden of proof resting on the school authorities to justify delay.

"(5) The defendants shall give timely notice to all prospective pupils affected by this order of the choice open to them in order that they shall have ample opportunity to exercise such choice.

"(6) The court will retain jurisdiction of this cause for the entry of such other and further orders as may be necessary from time to time."

The judgment of the trial court is reversed and the case is remanded for the entry of the order hereinabove indicated.

On account of the importance of the time element in effectuating this judgment, it is ordered that the mandate of this Court shall issue forthwith.

CARSWELL, District Judge (dissenting).

Guide lines for the pace of compliance with Constitutional mandates with respect to the operation of public schools have been the subject of very recent and rather exhaustive treatment in the opinions of the Supreme Court and of this Court. See United States Supreme Court opinion in Calhoun v. Latimer, 84 S.Ct. 1235, dealing with the Atlanta school system and appealing the opinion of the Fifth Circuit in 321 F.2d 302; and three opinions of the Fifth Circuit dated June 18, 1964: Stell et al. v. Savannah-Chatham County Board of Education et al., 333 F.2d 55; Davis et al. v. Board of School Commissioners of Mobile County et al., 333 F.2d 53; Armstrong et al. v. Board of Education of City of Birmingham, Alabama et al., 333 F.2d 47. These same opinions are correctly noted by the Court in this case.

My disagreement with the action taken by the majority in this case stems from a basically different concept of sound judicial administration. Here the Court, having properly noted the guiding principles applicable in this field, proceeds, without further ado, to order the district court to enter an injunction and, moreover, an injunction which is actually a full-blown plan for the operation of the Dougherty County school system.

First, in my view, this simply violates the long standing, and wise, view that no court should rain down injunctions unless there be some demonstrated factual necessity to insure compliance with the law. There is not on this record any such factual showing at all.

This concept of restraint is no less wise in school cases than in others. Indeed, duly constituted school boards are entitled to a fair presumption of good faith when they represent, as here, an intention to effectuate the law. If there be shown at any time good reason to doubt professions of good faith, the great injunctive powers of the Court may be brought to bear promptly. I would not assume, without recorded facts to the contrary, that a school board must be enjoined to comply with the law. Nor do I assume that the issuance of an injunction is a harmless nudge which only the recalcitrant should fear. Actually, the immediate issuance of injunction in such case may well have the practical effect of cutting from the district court a potential for insuring orderly compliance which would otherwise be available to it.

This leads to the second and perhaps more serious fault I find in the Court's action. With a most meager factual record before it the majority here spells out with some considerable minutiae a plan of its original authorship for the operation of the Dougherty County school system. Not only is the school board given no chance to be heard on the various requirements so meticulously set down but the district court itself is stripped of authority to hear or consider any matters which might well be in the interest of all parties. Both the district court and the school board are thus confronted with administering a plan untested in the light of facts on the record.

As I read the opinion the majority's plan is not promulgated, I trust, as a model for all school jurisdictions of this Circuit, nor is it, I suppose, a mold of inflexible cast which may be turned to by the various district courts as an easy and standard nostrum in all such cases arising from El Paso to Key West. It confines itself to "minimum require-ment(s) for the board of education of Dougherty County" in elaborate specifics.

The specifics must remain, the majority seems to say, "somewhat flexible." With this I agree, for only in this manner can there be the development of a meaningful body of common law giving life and reality to the Constitutional mandates in this field. The inversion of the judicial process in this continuing task is less likely to speed the day when Brown v. Topeka and its subsequent amplifications become thoroughly and universally meaningful.

With sincere deference to the views of the majority I would remand this case on grounds of sound judicial administration to the district court, which, under our judicial system, must have initial and continuing responsibility for full compliance with Constitutional requirements, for the taking of additional testimony, if appropriate, and for consideration in the light of the following cases: Calhoun v. Latimer, 84 S.Ct. 1235; Stell et al. v. Savannah-Chatham County Board of Education et al., 333 F.2d 55; Davis et al. v. Board of School Commissioners of Mobile County et al., 333 F.2d 53; Armstrong et al. v. Board of Education of City of Birmingham, Alabama et al., 333 F.2d 47.