**Doris Elaine BROWN et al., Plaintiffs-Appellants,**

**v.**

**The BOARD OF EDUCATION OF the CITY OF BESSEMER et al., Defendants-Appellees.**

**No. 29209.**

United States Court of Appeals, Fifth Circuit.

Aug. 28, 1970.

Rehearing Denied Sept. 28, 1970.

David H. Hood, Jr., Bessemer, Ala., Oscar W. Adams, Jr., U. W. Clemon, Birmingham, Ala., Jack Greenberg, Norman C. Amaker, Norman J. Chachkin, New York City, for plaintiffs-appellants.

J. Howard McEniry, Bessemer, Ala., for defendants-appellees.

Jerris Leonard, Asst. Atty. Gen. of the U. S., Dept. of Justice, Washington, D. C., for other interested parties.

Before THORNBERRY, CLARK and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This school desegregation case was last before the court as one of the en banc school cases decided in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969) (en banc), rev'd in part sub nom, Carter v. West Feliciana Parish School Board, 396 U.S. 226, 90 S.Ct. 467, 24 L.Ed.2d 382 (1969). Throughout its appellate peregrinations, *Bessemer* has had as a constant companion the Jefferson County case.[1] Because the last round of litigation in the United States District Court has created different issues for appellate review, they now part company.

Pursuant to the mandate in *Singleton, supra,*[2] the district court ordered the Board of Education to submit a plan of desegregation by January 30, 1970, embodying the provisions of *Singleton* and providing for total student desegregation by February 1, 1970. On February 2, 1970, the district court entered its order approving the Bessemer plan as filed. The Board plan was an interim measure approved only for the remainder of the 1969–1970 school year. The terminal plan for student desegregation, prepared by HEW and submitted to the court in November, 1969, was approved by the court's order of February 2, as the plan for desegregation of the Bessemer school system commencing with the September, 1970, school term. We need not examine the constitutional sufficiency of the plan submitted by the Bessemer Board of Education, for that plan is no longer in operation. Rather, we examine the Bessemer school system under the HEW terminal plan of desegregation to determine if it is now unitary within the meaning of the Supreme Court decisions in Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed. 2d 19 (1969); Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); and the decision of this court in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (1969).

---

1. United States v. Jefferson County Board of Education, 417 F.2d 846 (5th Cir. 1969); 417 F.2d 834 (5th Cir. 1969); 380 F.2d 385 (5th Cir. 1967); 372 F.2d 836 (5th Cir. 1966); 349 F.2d 1021 (5th Cir. 1965).

2. *Bessemer*, together with *Jefferson, supra,* was reversed and remanded for compliance with the requirements of Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed. 2d 19 (1969) and the district court was directed to require the Bessemer Board of Education to request the Office of Education (HEW) to prepare a plan for the merger of the student bodies into a unitary system.

Consistent with this court's more recent approach, we have obtained supplemental findings of fact from the district court in an effort to finally adjudicate the status of this system from the standpoint of all the essentials required to convert from a dual to a unitary school system. Mannings v. Board of Public Instruction of Hillsborough County, Florida, 427 F.2d 874, at p. 875 (5th Cir. 1970); Ellis v. Board of Public Instruction of Orange County, Florida, 423 F.2d 203 (5th Cir. 1970).

■ Of the six criteria mentioned in *Green, supra,* and analyzed in *Ellis, supra,* for the eradication of racial identifiability of the schools in a dual system— the plaintiffs' objections focus only on the composition of certain school student bodies.[3]

Commencing with the September, 1970, school term, the Bessemer Board of Education projects 7,757 students, 4,729 Black and 3,028 White, attending eight elementary, four intermediate and two senior high schools plus one system-wide vocational school. Under the HEW plan approved by the district court, school attendance is based upon geographic zones —zone lines being drawn to accommodate a 4-4-4 grade structure, i. e., 4 grades at the elementary, intermediate and senior high level, respectively.

On July 9, 1970, 429 F.2d 576, this court ordered the district court to consider the feasibility of pairing several of the schools at the elementary and intermediate level so as to eliminate their racial identifiability. The proposed pairings were: Hard Elementary with Arlington Elementary; Carver Elementary with Jonesboro Elementary; Hard Intermediate with Clarendon Ave. Intermediate; and Abrams Intermediate with Second Ave. Intermediate. The district court found that there were no insurmountable geographical hazards to the proposed pairings and the cost would be insignificant. However, the court did find that the pairings would be educationally and administratively unsound in that the pairings would "in and of themselves, destroy the aim of the Bessemer School System to establish the 4-4-4 non graded system." We are compelled to reject this finding by the district court.

■ The restructuring of the grade system in the proposed pairings is not, by itself, such an indicium of educational unsoundness as to render an otherwise feasible alternative unacceptable. Andrews v. City of Monroe, 425 F.2d 1017 (5th Cir. 1970). No particular grade structure can be considered inviolate when constitutional rights hang in the balance. However, we are not insensitive to the educational aims of the Bessemer Board of Education and even if the argument of inviolability were accepted, a reasonable alternative exists for there is evidence in the record that the proposed pairings could be accomplished without upsetting the desired 4-4-4 grade structure.

Unlike *Ellis, supra,* and Lee v. Macon County Board of Education, 429 F.2d 1218 (5th Cir. 1970), where there exists a strict neighborhood system based on school capacity and observed without exception, the zone lines drawn for certain of the Bessemer schools are not based on the school's full capacity, but rather duplicate the limited enrollment under freedom-of-choice. As this court stated in Youngblood v. Board of Public Instruction of Bay County, Florida, 430 F.2d 625 at p. 627 (5th Cir. 1970), "The effect is to restrict the geographic area which the school serves, with the result that the school remains predominantly black." As an example, Hard Elementary school has a permanent capacity of 1,295 students, yet under the plan as adopted by the district court, the projected enrollment for

3. The six criteria utilized in assessing the unitary nature of a school system are: composition of the student bodies, faculty, staff, transportation, extracurricular activities and facilities. Ellis v. Board of Public Instruction of Orange County, *supra.* The remaining five criteria have been incorporated within the HEW plan approved by the district court and, as to them, there are no claimed deficiencies and we perceive none.

that school for the September, 1970, school term is only 673 students. The inadequacies of such a plan are obvious and they must be remedied.

Accordingly, and in light of the foregoing, it is ordered that the district court direct the Bessemer Board of Education to forthwith take the following action. Pair Hard Elementary (265 Black, 8 White) with Arlington Elementary (118 Black, 141 White)—these two schools are only one mile apart and it is both feasible and reasonable to pair them. Carver Elementary (251 Black, 20 White) must be paired with either West Hills Elementary (0 Black, 133 White), Vance Elementary (165 Black, 175 White) or Jonesboro Elementary (112 Black, 212 White). Hard Intermediate (397 Black, 3 White) is to be paired with Clarendon Ave. Intermediate (375 Black, 340 White). It is possible that substantially the same result could be achieved with regard to the desegregation of Hard Elementary, Carver Elementary and Hard Intermediate by redrawing the zone lines rather than pairing. Alternatively, the district court is authorized to adopt any other plan submitted by the school board or other interested parties, *provided,* that such alternate plan achieves at least the same degree of desegregation as that reached by our modifications.[4] See Pate v. Dade County School Board, 434 F.2d 1151 (5th Cir. 1970). Failing the submission of an effective alternate plan, the district court is directed to implement the foregoing modifications.

■ One further problem exists with reference to the Greenwood Elementary School—an all white elementary located in the southernmost part of the school district `and 5.2 miles distant from the center of the city. Although the Bessemer Board of Education maintains no transportation system and owns no school buses, white students residing outside the Bessemer district are transported (by county buses) to the all white Greenwood school under an exchange agreement between Bessemer and Jefferson County. This agreement, and the cumulative effect of perpetuating the dual system, is in violation of this court's mandate in *Singleton, supra,* and the provision of the HEW plan approved by the court below relating to attendance outside the system of residence. The district court is directed to require the Board of Education to cease permitting transfers into the district in violation of the provisions of the approved plan.

■ It is noted that the HEW plan approved by the district court suggests the establishment of a Bi-Racial Advisory Committee to advise the Board of Education and its staff throughout the implementation of the desegregation plan. It is not apparent that this has been done. Upon remand, the district court is to appoint a Bi-Racial Advisory Committee similar to that constituted in *Ellis, supra,* and Singleton v. Jackson Municipal Separate School District, 426 F.2d 1364 (5th Cir. 1970). The membership of the committee shall be not less than ten (10) nor more than twenty (20) in number. The utilization of such a committee in fostering better community relations and facilitating the transition from a dual to a unitary school system has had undoubted value.

While it is further recognized that faculty and staff assignments for the forthcoming school year have not yet been made, the district court should be vigilant in enforcing compliance with the faculty ratios under the approved plan.

■ The balance of the district court's findings, *viz.,* (1) updating the majority to minority transfer provision so as to provide priority for space to transferees and (2) ordering all vocational instruction to be conducted in the Carver system-wide vocational school— are approved.

The plan as formulated and modified herein is to be implemented and the mandate shall issue forthwith. No stay will

4. See Appendix A for the racial composition of the respective student bodies under the HEW plan and that plan as modified herein.

be granted pending petition for rehearing or application for writ of certiorari.

Affirmed in part; reversed in part; remanded with directions.

*APPENDIX A*

| | Schools | Grades | HEW PLAN | | | As Modified By Pairing | | |
|---|---|---|---|---|---|---|---|---|
| | | | W | B | T | W | B | T |
| | Hard Elementary | 1-4 | 8 | 265 | 273 | 75 | 191 | 266 |
| | Arlington Elementary | 1-4 | 141 | 118 | 259 | 74 | 192 | 266 |
| Alternative 1 | Carver Elementary | 1-4 | 20 | 251 | 271 | 116 | 181 | 297 |
| | Jonesboro Elementary | 1-4 | 212 | 112 | 324 | 116 | 182 | 298 |
| Alternative 2 | Carver Elementary | 1-4 | 20 | 251 | 271 | 76 | 126 | 202 |
| | West Hills Elementary | 1-4 | 133 | 0 | 133 | 77 | 125 | 202 |
| Alternative 3 | Carver Elementary | 1-4 | 20 | 251 | 271 | 98 | 208 | 306 |
| | Vance Elementary | 1-4 | 175 | 165 | 390 | 97 | 208 | 305 |
| | Hard Intermediate | 5-8 | 3 | 397 | 400 | 172 | 386 | 558 |
| | Clarendon Ave. Intermediate | 5-8 | 340 | 375 | 715 | 171 | 386 | 557 |