Alvin J. SYREK, Jr., Richard Tworek, Richard C. Hoyle, Frank C. Rogalla and Allen F. Mascari, Civil Technician Employees of the Pennsylvania Air National Guard, Individually and on behalf of all other employees similarly situated, Plaintiffs,

v.

PENNSYLVANIA AIR NATIONAL GUARD and Harry J. Mier, Jr., Peter R. Phillipy, Hugh S. Niles, and Richard L. Prave, Individually and as management officials of the Civil Technician Program of the Pennsylvania Air National Guard, Defendants.

Civ. A. No. 73-748.

United States District Court, W. D. Pennsylvania.

March 30, 1977.

John R. Cook, Fine, Perlow & Stone, Pittsburgh, Pa., for plaintiffs.

Blair A. Griffith, U. S. Atty., Pittsburgh, Pa., for defendants.

## OPINION

McCUNE, District Judge.

Plaintiffs are employed as civilian technicians by the Pennsylvania Air National Guard (Guard). They brought this action under 42 U.S.C. §§ 1983, 1985 and 1986 to challenge the validity of Guard regulations which require them to comply with hair-length standards. Plaintiffs seek a declaratory judgment, injunctive relief and damages.

Following a trial, this court dismissed the complaint for failure to state a claim upon which relief could be granted. The Court of Appeals has reversed our decision and remanded, holding that the "complaint has sufficiently alleged a deprivation, under color of state law, of a constitutional right, to warrant the invocation of federal jurisdiction." *Syrek v. Pennsylvania Air National Guard,* 537 F.2d 66 (3d Cir. 1976). We must now determine whether plaintiffs, as civilian employees of the Guard, are entitled to relief on the merits. Believing that the resolution of this matter is controlled by the decision of the Supreme Court in *Kelly v. Johnson,* 425 U.S. 238, 91 S.Ct. 1440, 47 L.Ed.2d 708 (1976), we hold that plaintiffs are not entitled to the relief sought.

## I

Civilian technicians are employed by the Guard pursuant to 32 U.S.C. § 709. Section 709(b) requires that civilian technicians be members of the Guard and hold the military

grade specified for their positions. Thus, the plaintiffs occupy a dual role: during the week they work as civilians; one weekend a month and for two weeks in the summer they drill with the Guard. Their work involves the administration and training of the Guard, and the maintenance and repair of supplies issued to the Guard; the regulations under which they work are prescribed by the Secretary of the Air Force and the State Adjutant General. 32 U.S.C. § 709(a) and (c). According to Pennsylvania Air National Guard Regulation (Pa. ANGR), 40–01, ¶ 2–5,[1] civil technicians must comply with the rules, customs and courtesies of the military service while performing their duties as technicians just as if they were on duty in their military status. This regulation incorporates Air Force Manual (AFM) 35–10, ¶ 1–12, which provides the standards for hair styles and lengths.[2]

In May, 1971, defendant Phillipy, a brigadier general in the Guard and base detachment commander of the Guard at the Greater Pittsburgh Airport, notified the technicians under his command, including the plaintiffs, that AFM 35–10 was applicable to them. The evidence presented at trial disclosed that plaintiff Syrek, following a personal notification from General Phillipy that his hair style violated AFM 35–10, was given a five-day suspension without pay and eventually fired from his job as a technician because of his continued refusal to comply with the regulation. Plaintiffs Rogalla and Mascari received two-day suspensions for their failure to comply with the regulation. Plaintiffs Tworek and Hoyle have been repeatedly warned of hair style violations but have complied with the regulation in order to avoid any disciplinary action.

---

1. Pursuant to 32 U.S.C. § 709(a), the Secretary of the Air Force promulgated ANGR 40–01. Paragraph 2–4 directs the adjutant general of each state to implement various regulations at the state level. Pa. ANGR 40–01, ¶ 2–5 is one such regulation.

2. AFM 35–10, ¶ 1–12a.2 provides:
   "Hair. Hair will be neat, clean, trimmed, and present a groomed appearance. Hair will not touch the ears or the collar except the closely cut hair on the back of the neck.

## II

In the case of *Kelly v. Johnson, supra,* the Supreme Court upheld the hair regulations of a civilian police force. The Supreme Court began by emphasizing that the Fourteenth Amendment liberty interest in matters of personal appearance is not absolute, and that the government may impose on its employees restrictions that would be impermissible intrusions on liberty if imposed by the government on citizens at large. *Kelly, supra,* 425 U.S. at 245, 96 S.Ct. 1440. Plaintiffs, as civilian technicians, are governmental employees. The Supreme Court then held that the state must demonstrate a rational connection between the regulation and the legitimate government interest which the regulation seeks to promote. The Court rejected a standard under which the Court of Appeals for the Second Circuit would have placed the burden on the government to establish a genuine public need for the regulation. The constitutional issue to be decided is whether the defendants' determination that such regulations should be enacted is so irrational that it may be termed arbitrary. 425 U.S. at 247–248, 96 S.Ct. 1440. We must follow these guidelines in resolving this dispute.

The civilian technician force plays an essential role in assuring the combat readiness of the Guard, which exists "as an integral part of the first line defenses of the United States." 32 U.S.C. § 102. Plaintiffs suggest, in their brief, that the sole function of the civilian technicians is to care for the equipment loaned to the State by the federal government. In support of this limited view, which forms the basis of plaintiffs' contention that the application of the

It will present a tapered appearance. Hair in front will be groomed so that it does not fall below the eyebrows and will not protrude below the band of properly worn headgear. In no case will the bulk of length of the hair interfere with the proper wear of any Air Force headgear. The acceptability of a member's hair style will be based upon the criteria in this paragraph and not upon the style in which he chooses to wear his hair."

Guard hair regulation to them advances no legitimate state interest, plaintiffs rely on the case of *Maryland, for the use of Levin v. U. S.,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965).[3] However, a reading of that case indicates that the technicians occupy a position much more vital to the functioning of the Guard than plaintiffs are willing to admit. Speaking for the Court, Mr. Justice Harlan stated that the technicians "have been termed the 'backbone' of the Guard, and are the only personnel on duty with Guard units during the greater part of the year." 381 U.S. at 49, 85 S.Ct. at 1298. The evidence in the trial of this case supports that statement. Moreover, the 1968 Amendment to 32 U.S.C. § 709, Pub.L. 90–486, enhanced the close relationship between the technicians and the Guard. The term "technicians" was substituted for the term "caretakers"; all technicians were required to be members of the Guard; and "the administration and training of the National Guard" were added as statutory duties in addition to the maintenance of supplies. 32 U.S.C. § 709(a), (b). The entire record establishes that a technician, as a full-time civilian employee, is an essential element in the operation of the Guard.

However, our decision to uphold the application of this regulation to the technicians is not based alone on the cases which uphold the discretionary power of the military to regulate the hair length of soldiers.[4] In addition we base this decision on the fact that Congress has chosen to organize and administer the civilian technician program within the military framework of the Guard. Under these circumstances, we believe that the rationale of *Kelly,* that deference be given this choice, is controlling in this case. 425 U.S. at 246–247, 96 S.Ct. 1440. Congress has determined that the technicians will belong to the Guard and

perform their civilian duties in accordance with the military standards set by the Air Force and Adjutant General of the State, including the requirement that technicians wear the military uniform while performing their civilian jobs. The technicians have been organized in a manner deemed to be the most practical, efficient and effective to insure that their statutory duties be carried out. Because of the extremely close connection between the technicians' civilian and military status, great emphasis has been placed on uniformity, discipline and esprit de corps in the technician program. It is significant that the plaintiffs do not challenge the validity of this entire military structure. The requirements that they be members of the Guard and wear their uniforms most certainly infringe on their freedom of choice. Their attack on the hair-length regulation must, according to *Kelly,* be viewed in the context of the organizational structure chosen by Congress, the Air Force and the State Adjutant General in order to determine whether the regulation, as applied to civilian technicians, bears a rational relationship to the operation of the Guard in the safeguarding of the country.

At trial, plaintiffs endeavored to highlight the differences between civilian and military personnel. Civilian technicians do not, as a result of their civilian status, receive the educational, health and housing benefits received by members of the Guard. Civilian technicians, as a result of their civilian status, may join labor organizations. Their job classification is determined by the civil service commission. None of these statements are true for members of the Guard. However, these differences are meaningless. As a condition of their employment, civilian technicians must be members of the Guard; they may partici-

---

**3.** In that case, the Supreme Court held that a civilian employee and military member of the Guard was not a federal employee for purposes of the Federal Tort Claims Act. In *Lasher v. Shafer,* 460 F.2d 343 (3d Cir. 1972) our Court of Appeals held that superior officers of a civilian technician were acting under color of state, rather than federal, law for purposes of a § 1983 action. Both of these cases arose before

the 1968 amendment to 32 U.S.C. § 709, which lifted technicians above mere "caretaker" status.

**4.** See, *Raderman v. Kaine,* 411 F.2d 1102 (2d Cir. 1969), *cert. dismissed,* 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447 (1969); *Kelly v. Johnson, supra,* 425 U.S. at 241, n. 2, 96 S.Ct. 1440.

**240**

pate in civilian benefits, therefore, only because they are members of the Guard.

The defendants presented evidence to show the interrelationship between the duties performed as a technician and a Guardsman. The plaintiffs, as technicians, are depended upon by the Guardsmen for their expertise and continuity of leadership. They are responsible for the training of Guardsmen during drills. They may be required to leave the base at Pittsburgh to perform their duties at other Air Force bases within this country and overseas, and within the surrounding civilian community. During these times, they will often be performing side by side with Guardsmen who are acting in a military status. They must perform their aircraft maintenance duties in accordance with Air Force specifications. We agree with General Phillipy's assessment that the technicians perform their duties on military equipment using military procedure in a military environment. The requirement that civilian technicians, as a part of the overall disciplinary requirements of their jobs, comply with Air Force hair standards is reasonably related to assuring the combat readiness of the Guard, which is the technicians' primary purpose. Our concern here is not, as plaintiffs insist, whether the hair regulation is necessary to achieve this purpose, but whether this admitted limitation on freedom of choice is a rational exercise of the legitimate interest the Guard has in regulating plaintiffs personal appearance. We are satisfied that it is.

Therefore, the relief sought by plaintiffs will be denied, and judgment entered in favor of the defendants.

The findings required by Rule 52 are stated herein.

An order follows.